UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBRA SANTACRUZ, *Plaintiff* | § § § | |
| v. | § § § | CIVIL ACTION NO. 21-cv-00719 |
| VIA METROPOLITAN TRANSIT, *Defendant* | § | |

PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Debra Santacruz, submits this her Original Complaint, and shows as follows:

I.

Jurisdiction

1. This is an action for disability discrimination under the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*

2. Defendant is an "employer" as defined by the ADA in 42 U.S.C. §12111(5).

3. The actions complained of below took place in Bexar County, Texas. Venue is proper in Bexar County, San Antonio Division pursuant to 28 U.S.C. §1391(b), since Bexar County is where Defendant operates its transit facility.

4. Plaintiff has complied with all prerequisites to jurisdiction in this Court under the ADA. Jurisdiction is proper under 28 U.S.C. §1343, 29 U.S.C. §2617.

II.

Parties

5. Plaintiff is a citizen of the State of Texas and resides in Bexar County, Texas. Plaintiff worked for Defendant from 2001 to 2019. During the time that Plaintiff was employed by Defendant, she was an "eligible employee" as defined by the ADA in 42 U.S.C. §12111(4).

6. Defendant Via Metropolitan Transit is a municipal corporation created under the Texas Transportation Code. Tex.Transp.C. Sec. 451.052(c). VIA may be served with process

through its President and CEO, Jeffrey C. Arndt, 123 N. Medina Street, San Antonio, Texas 78207.

7. Defendant is an "employer" as defined by the ADA in 42 U.S.C. §12111(5).

III.

Facts

8. Plaintiff, Debra Santacruz, worked for VIA from 2001 to 2019 as a Reservation Agent in the Paratransit department. It was her job to schedule persons with disabilities for rides with VIA Trans. Plaintiff Santacruz had chronic back pain due to a hairline fracture in her tailbone. In 2016, she asked for and received FMLA leave and an ADA accommodation in the form of brief breaks and days off to deal with flare-ups of her pain. As recently as 2019, her FMLA intermittent leave was approved by VIA.

9. Ms. Santacruz' impairment affects her ability to sit for long periods. She must get up to walk and stand every so often. When she has a flare-up of her back pain, she cannot move quickly and the lower portions of her back becomes swollen and aches. She must sometimes sit in strange positions in her char to reduce the pain.

10. The fracture affects Plaintiff in sitting too long, standing too long and walking too far. She cannot sit for more than two hours without getting up or moving around. If her back becomes too sore, then she cannot bend without enduring significant pain.

11. In 2018 and 2019, VIA started a new policy requiring a medical excuse for every absence. This policy applied even if the employee did not see a doctor. The policy also applied to approved FMLA leave absences. The policy provided that the employee taking absences without a medical excuse would receive points. In 2019, Plaintiff accumulated many points due to FMLA related absences.

**Intermittent Leave**

12. Plaintiff first requested FMLA leave for her back pain in 2016 after she became a full-time employee. Before, when she worked no more than five hours per day, the back pain was more manageable. As a full-time worker, she requested and received intermittent FMLA leave. Within about one month of becoming full-time, Ms. Santacruz spoke to her supervisor, Blanca Dominguez, about her need to get up and walk around. Blanca agreed that she could do so. Plaintiff's practice then was to take one walk around

her desk before lunch and another walk around her desk after lunch. Ms. Dominguez agreed to this practice.

### New Policy

13. About February, 2018, Blanca Dominguez and Belinda Guzman, the second level supervisor, started a new policy that Reservation Agents need to use PTO (Paid Time Off) before they use FMLA leave. After the worker's PTO would run out, then the supervisors would assess points for each absence, even if the absence qualified as FMLA leave. Also about this time, the two supervisors restricted bathroom breaks and the ability to walk around a desk.

14. In May, 2018, a home based Reservation Agent position came open. Plaintiff Santacruz asked to be considered for that position. Plaintiff explained that she would not need FMLA leave, because she could simply stretch out at home. Ms. Dominguez simply laughed. She later gave the position to someone with less seniority, George Martinez.

15. In January, 2019, VIA approved and renewed Plaintiff's request for intermittent FMLA leave. By this time, Plaintiff had accumulated 11 points due to absences. Four of those points (for two days) were for FMLA related absences. Plaintiff was then late for one or two minutes. That should have resulted in 12 points and suspension. But, Ms. Dominguez removed two points and put Plaintiff at ten points.

16. In February, 2019, Plaintiff's doctor told her she should not work for two weeks due to her back and high blood pressure.

17. About March, 2019, Ms. Dominguez started to time Plaintiff's bathroom breaks. Supervisor Dominguez said her breaks exceeded four minutes sometimes. Ms. Dominguez timed other employees on their breaks, as well.

18. Ms. Dominguez would on occasion make disparaging comments about Plaintiff's weight and looks.

### Accused of Abusing FMLA Leave

19. In March, 2019, when Plaintiff returned to work, Ms. Dominguez told Plaintiff she had been abusing FMLA leave. Ms. Dominguez said she would be watching Plaintiff.

20. About this time, Ms. Guzman sent an email to the agents starting a new policy that if a person did not have a medical excuse or PTO, then an absence would result in two points, even if that absence was related to FMLA leave. The email also said each request

for leave would need to be requested two weeks in advance. Anyone seeking time off would need to find her own replacement.

21. In April, 2019, Plaintiff missed two doctor appointments because she did not receive the required approval in time. She had to re-schedule both appointments.

22. Plaintiff was then approved to take off April 16, 2019 for a doctor's appointment.

23. On April 17-19, Plaintiff Santacruz called in sick because she could not get out of bed due to back pain. When Plaintiff called into work, Gloria Dominguez, Second Lead Manager, told Ms. Santacruz that Blanca Dominguez had said to tell her (Ms. Santacruz) she needed doctor excuses. Ms. Santacruz said she couldn't afford to go to the doctor, and Gloria said "oh well, oh well."

### Too Many Points

24. Because Ms. Santacruz didn't go to the doctor for those days (too expensive), Belinda Guzman did not approve the absences. For each day missed, that absence added 2 points each. This made Ms. Santacruz exceed the 14 points under VIA's point system.

25. On April 20, 2019, Plaintiff went to work as normal. Blanca Domiguez did not work that day. Gloria Dominguez told her (Santacruz) she should call Blanca to make sure she could still come in on 23rd (her next shift) because she hadn't given doctor excuses before.

### Terminated

26. On April 22 (Monday), Plaintiff called Blanca Dominguez to make sure she could come to work on April 23. Blanca said "you know how that's going to work, you're up to 17 points. I'm tired of it, tired of your shit, going to get back with Daniel Chaipan in the morning and that's it, you're terminated." Ms. Santacruz replied, "but how am I going to go to work? But Blanca…" And then Blanca hung up on her. Ms. Santacruz called Blanca back and Blanca said no you're harassing me, I don't want to talk to you.

27. On April 23, Ms. Santacruz called Sylvia Castillo, the third level supervisor, and said, "Blanca fired me because she said I already had my points and I was fired. And I was out due to my back." Ms. Castillo repleid, "I wasn't aware you had that many points. They usually tell me when people get more than [some number lower than 10]." Sylvia said she would call back.

28. Ms. Santacruz waited a few hours and Sylvia hadn't called, so she called Daniel

Chaipan, who is above Blanca. Mr. Chaipan said "if that's what Blanca told you…that's the way it is," but he also said "if you want, you can come back and finish out the pay period. It's a week to two week process" to fire someone. Ms. Santacruz understood Mr. Chaipam to say she was definitely fired and it was just a matter of doing the paperwork.

29. Plaintiff then called Ms. Castillo who worked out with Plaintiff how she could obtain her 401K. Ms. Castillo suggested Plaintiff resign, to avoid the termination on her record. Plaintiff told Ms. Castillo she cannot quit, because she has been fired.

30. Plaintiff applied for unemployment benenfits. That is whne she leanred that VIA claimed she was not fired and that if she was fired, Blanca Dominguez lacked the authority to fire an agent.

IV.

Claims for Relief

31. Plaintiff re-alleges and incorporates by reference above paragraphs I-III. During Plaintiff's employment at Via Metropolitan Transit, Defendant discriminated against Plaintiff with respect to terms, conditions, conditions and privileges of her employment because of Plaintiff's impairments and her need for accommodation.

32. While Plaintiff was employed by Defendant, she had health conditions that qualify as impairments under the ADA as outlined in 42 U.S.C. § 12102(1), (2), and §12111(9). She sought intermittent medical leave for her impairments and back pain.

33. Plaintiff was entitled to accommodations for her serious health condition as provided for in the ADA in 42 U.S.C. 12102(4)(E). Yet, Defendant terminated Plaintiff when her need for intermittent leave increased.

34. Defendant discriminated against Plaintiff on the basis of her disability. VIA knew Plaintiff suffered a substantial back impairment. It knew she had requested an accommodation. Defendant denied her the requested accommodations. Those accommodations would have allowed her to perform the essential functions of her job. VIA terminated Plaintiff due to her impairment. These actions have served to limit or classify persons with disabilities in violation of 42 U.S.C. §12111(a), (b)(5).

35. As a result of Defendants' violations of the FMLA, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial.

5

36. As a result of this violation of the ADA, Plaintiff requests that she be awarded all damages, to which he is entitled, as outlined in 42 U.S.C. §12205, 42 U.S.C. §1981a, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest. In addition, Plaintiff requests compensatory damages, as provided in the above named statutes. Plaintiff also requests any additional equitable relief to which she is entitled.

VI.

37. The unlawful practices of Defendant, in violation of the ADA, occurred during the course of Plaintiff's employment with Defendant, Via Metropolitan Transit, and were carried out by Defendant's agents, servants and employees.

VII.

38. The effect of the policy and practice pursued by Defendant, as alleged above has been to limit, segregate, classify and discriminate against Plaintiff, Debra Santacruz, in ways which jeopardized her career, and which were intended to deprive her of her employment opportunities by reason of her need for medical leave for her impairments, and otherwise adversely affect hierstatus as an employee.

39. The Plaintiff stood at all times ready, willing and able to perform her duties and to accept the benefits to which she was entitled to receive. By reason of Defendant's actions, Plaintiff has found it necessary to retain the services of an attorney in this proceeding, and is therefore entitled to attorney's fees pursuant to 42 U.S.C. §12205, and 42 U.S.C. §§1981 and 1988.

VIII.

31. Plaintiff requests a jury trial on all issues triable by a jury.

WHEREFORE, Plaintiff prays for:

(a) backpay;
(b) loss of fringe benefits;
(c) loss of future earnings and benefits;
(d) compensatory damages;
(e) attorney's fees, litigation expenses and costs;
(f) reinstatement with adequate job protections;

(g) Such other and further relief, at law and in equity, as the Court deems necessary and appropriate to correct the conditions of discrimination complained of above.

Respectfully submitted,

*Thomas J. Crane*

Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
900 N.E. loop 410, Suite D306
San Antonio, Texas 78209
(210) 736-1110
(210) 745-4258 Fax
tom@cranelawyer.net

Attorney for Plaintiff