## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBRA SANTACRUZ, *Plaintiff* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | 21-CV-00719-FB |
| VIA METROPOLITAN TRANSIT, *Defendant* | § | |

## PLAINTIFF'S RESPONSE TO
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Debra Santacruz, submits this her Response to Defendant's Motion for Summary Judgment, and show as follows:

The Defendant submitted its Motion for Summary Judgment on Aug. 1, 2022. Plaintiff now submits her Response. Plaintiff also submits a Motion to Strike Defendant's Evidence Used in Its Motion for Summary Judgment.

Table of Contents

Exhibits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Law ……………………………………………………………………………………. 4

Fact Summary………………………………………………………………………………. 4

Argument on the Merits ……………………………………………………………… 12

   1.  The Defendant has mis-stated evidence or pointed to evidence in mis-leading

       ways …………..…………………………………………………………….. 12

   2.  Plaintiff has satisfied the prima face elements for failure to accommodate …. 16

   3.  A reasonable jury could find that Plaintiff was fired ………………………… 21

   4.  Defendant discriminated against Plaintiff on the basis of her disability ……. 24

Conclusion ……………………………………………………………………………. 25

Exhibits

| Exhibits | Description |
|---|---|
| A | Blanca Dominguez Depo |
| B | Claudia de Gonzalez Depo |
| C | Debra Santacruz Depo |
| D | Discovery Documents |

| | |
|---|---|
| D-1 | VIA Records |
| D-2 | VIA Records |
| D-3 | Health Texas Medical Group Records Dated Dec. 11, 2018, Aug. 21, 2018, Oct. 24, 2018, Oct. 23, 2018, Oct. 16, 2018, May 25, 2017 |
| D-4 | Jan. 18, 2019 Memo |
| D-5 | Santacruz Jan. 31, 2019 Email |
| D-6 | Procedure for Attendance |
| D-7 | March 9, 2019 Memo |
| D-8 | Santacruz May 29, 2019 Grievance |
| D-9 | Santacruz April 20, 2019 Email |
| D-10 | HTMG Records dated Jan. 29, 2019 |
| D-11 | Santacruz June 21, 2018 Email |
| D-12 | Castillo April 24, 2019 Email |
| D-13 | Blanca Dominguez March 7, 2019 Email |
| D-14 | Santacruz April 17-18, 2019 Attendance Reports, Medical Records |

| | |
|---|---|
| E | EEOC File Excerpts |
| F | Santacruz Declaration |
| G | Norma Garcia Statement |

*Law*

1. Summary judgment shall be rendered if the pleadings and evidence show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed.R.Civ. Pro. A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrates the absence of genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

2. All of the evidence and inferences drawn from the evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The judge's function is not to weigh the evidence or determine credibility. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See Tolan v. Cotton*, 572 U.S. 650, 134 S.Ct. 1861, 1863 (2014) (The appellate court exhibited a "clear misapprehension of summary judgment standards" when it credited the movant's witnesses while failing to properly acknowledge key evidence offered by the non-movant); *Heinsohn v. Carabin and Shaw, PC*, No. 15-50300, n.86 (5th Cir. 7/26/2016) (district court erred in excluding plaintiff's testimony solely because it was allegedly "self-serving." In doing so, the court did not follow *Tolan v. Cotton*).

*Fact Summary*

1. When Debra Santacruz was fired in 2019, she had worked successfully for Via Metropolitan Transit since 2001. Ex. D-1, Discovery Documents, Bates No. Santacruz000457, 407-409. Plaintiff Santacruz received some 14 compliments on her professionalism and excellent customer service. In 2002, the Manager of the Paratransit department complimented the Plaintiff on her "superior customer service." Another manager suggested that Plaintiff be part of the "elite team." "Keep up the good work!" Ex. D-2.

2. Ms. Santacruz was a part-time Reservation Agent until 2016, when she was promoted to full-time employment. Ex. C, Santacruz Depo, p. 34. As a Reservation Agent, Plaintiff's job was to schedule rides for persons with disabilities. Ex. C, p. 19.

**Intermittent FMLA Leave**

3. Plaintiff's back was injured. She had fallen and fractured her tail bone. Moving to

4

full-time work aggravated the injury.  Ex. C, p. 51-52.  In 2016, she submitted FMLA papers seeking intermittent leave for her back.  Ex. C, p. 52.  Ms. Santacruz' back is fine, so long as she can move a little every few hours.  She cannot sit for four hours straight without moving.  She needs to stand up or at least stretch.  Ex. C, p. 56.  Her back starts to swell which causes more pain. Ex. C, p. 207-208.  If she cannot do these things to relieve her back, the pain is so great that she cannot walk very far. She cannot bend. She cannot sit very long, or stand very long. Ex. C, p. 169.

### Ibuprofen

4. Sometimes, at work, Gloria Dominguez, a lead supervisor, would give Plaintiff Ibuprofen for the swelling.  Blanca would sometimes suggest to Gloria that she give Debra Ibuprofen for the pain, so Debra would not need to leave work.  Ex. C, p. 63, 169.  When Blanca promoted Debra from part-time to full-time in 2016, she knew about Ms. Santacruz' back.  Blanca Dominguez told Ms. Santacruz that it was fine if she needed to get up and move around.  The supervisor simply told the agent that she should place her phone on "work" – meaning her calls would be put in hold.  And, said Blanca Dominguez, Santacruz should tell Blanca or Gloria that she was moving around for her back.  Ex. F, Santacruz Decl. p. 2.  Supervisor Dominguez knew Debra was taking pain pills at work. Sometimes, Blanca Dominguez would suggest Debra take the pain pills, so she could continue to work. Ex. C, p. 168-169.

5. Gloria was taking 800 mg of Ibuprofen.  While, Debra had been prescribed 600 mg of then same pain medication.  Ex. C, p. 63, 207.  Gloria's pills would help Plaintiff function for a couple of more hours.  Ex. C, p. 208.  Plaintiff would need pills from Gloria typically when her own would run out or when the pain was simply greater than normal. Ex. C, p. 208.

6. Blanca Dominguez denied any knowledge about Gloria Dominguez or Debra Santacruz taking Ibuprofen at work.  She said she had never seen Gloria give Ibuprofen to Debra at work.  When asked if she had ever seen Gloria take Ibuprofen at work for herself, Blanca again said no.  Ex. A, p. 22.

### Work From Home

7. In 2018, Plaintiff Santacruz asked to become a home Reservation Agent.  Home Reservation Agents do the same job, but they work from home.  But, Supervisor Blanca told

5

her no. Blanca Dominguez told Plaintiff she had too many absences, even though her absences were covered by FMLA. Ex. C, p. 67-68, 69. Sylvia Castillo also said too many absences will disqualify an Agent from working from home. Ex. D-12. Sylvia Castillo was supervisor to Daniel Chaipan. Mr. Chaipan was supervisor to Blanca Dominguez.

## Individualized Assessment

8. Blanket policies against the hiring of persons with impairments -without an individualized assessment - violate the ADA. *See, e.g., Kapche v. City of San Antonio,* 304 F.3d 493, 499 (5th Cir. 2002) (collecting cases) (finding that the ADA requires an individualized assessment regarding insulin dependent applicants to a police department); *Rodriguez v. ConAgra Grocery Products Co.*, 436 F.3d 468, 475 (5th Cir. 2006) (finding employer's blanket policy against hiring anyone perceived as having uncontrolled diabetes as contradictory to "the TCHRA/ADA's emphasis on treating impaired job applicants as individuals); *Bombrys v. City of Toledo*, 849 F.Supp. 1210, 1216-1219 (N.D. Ohio 1993) (an un-rebuttable presumption that a person who relied on insulin was not qualified for the job violated the case-by-case requirement of the ADA); *Sarsycki v. United Parcel Service*, 862, F.Supp. 336 (W.D. Okla. 1994) (Finding that a requirement that drivers not need insulin violated the individualized assessment requirement of the ADA).

9. Remarkably, VIA and supervisor Blanca Dominguez claim to *not* have been aware of Plaintiff's impairment. Ex. A, p. 18-19, 25-26; Ex. B, p. 12-13. Yet, Supervisor Dominguez did admit to seeing Debbie Santacruz standing up at her desk periodically - even before the Reservation Agents were given the varidesks in 2019, which allow for standing. Blanca might have seen Debbie standing up at her desk. Yet, the supervisor claims she did not ask Debbie why she was standing. Ex. A, p. 27-28. Blanca testified under oath that she did not know Debra was sometimes in pain at work due to her back problems. Ex. A, p. 18, 25-26. Blanca said Debra Santacruz never mentioned to her anything about lower back pain. Blanca claims she never even heard Debra talking to a co-worker about lower back pain. Ex. A, p. 26. Plaintiff testified several times that Blanca knew about her chronic back pain. Ex. C, p. 22, 54-55, 63-64, 169; Ex. D-11. A former co-worker, Norma Garcia said Blanca and everyone knew about Plaintiff's chronic back problems. Ex. G, p.2.

6

10. Debra Santacruz mentioned those pills in an 2018 email to Supervisor Dominguez. In that email, Plaintiff tells her boss, Blanca Dominguez that she took six pills on the day before, so she could get through the work day. The day prior was "very hard," she tells Blanca. Now, she is sick from the pills. She does not know if she can make it through the work day on June 21, 2018. Ex. D-11. Plaintiff is telling her boss in this email that she took six pain pills the day before at work, pain pills about which Blanca claims she knew nothing. Plaintiff has authenticated that 2018 email. Ex. F, p. 4-5.

## VIA's Knowledge about Plaintiff's Impairment

11. VIA submitted a statement to the EEOC which specifically averred that Santacruz had never informed anyone at VIA of her disability. Ex. E, VIA Feb. 26, 2020 Letter, p. 2 and 3. Yet, that same VIA Feb. 26, 2020 letter includes an attachment that says, "when flare-ups [of her back] occur, Pt (Patient) has trouble sitting for prolonged periods of time." Ex. E, p. 9, 14. That same attachment to VIA's letter mentions Santacruz is a "50 y/o (year old) female č (with) chronic back pain" and "50 y/o (year old) c/o (complaining of) back pain and decreased FOM (freedom of movement])." Ex. E, p. 9, 14. VIA's attachment adds this from Dr. Torres, Plaintiff's treating physician: "To help rest her back & relieve pain, patient will be on meds that cause drowsiness." Ex. E, p. 10. This attachment at Ex. E is VIA's form. One form was faxed to VIA on Dec. 5, 2018, another form was faxed on Dec. 6, 2018, and a third form was faxed to VIA on April 4, 2019. Ex. E, p. 23, 17, 12, respectively. The forms refer to the FMLA, but they all describe chronic back pain. Yet, both VIA and Supervisor Dominguez claimed to be unaware that Plaintiff Santacruz had chronic back pain.

## Requesting an Accommodation

12. In VIA's Feb. 26 letter, it claimed that Dr. Torres did *not* request an accommodation in the forms which he submitted to VIA – which are attached at Ex. E. See Ex. E, p. 2-3. VIA's Feb. 26, 2020 letter was signed by Claudia de González, the EEO Officer for VIA. But, when Ms. de González testified, she agreed that Dr. Torres' language, "when flare-ups occur, patient has trouble sitting for long periods of time" – this language suggests a need for accommodation. Ex. B, p. 28-29. Ms. de González said she might have noticed the doctor's reference to an inability to sit for long periods of time. Yet, VIA's EEO

Officer prepared the Feb. 26 letter and sent it to the EEOC – without ever asking Plaintiff's supervisors if this was true. Ex. B, p. 29.

13. Ms. de González mentioned the varidesks which allow a person to stand while working. Ex. B, p. 29. But, as Plaintiff said, the varidesks were not given to the Reservation Agents until 2019. Ex. C, p. 59. Even so, the varidesk did not help Plaintiff. They would help for a time, but then she had the same problem, that she could not stand for long periods of time. Ex. C, p. 172-173. In any event, the time to address the reasonableness of an accommodation was in 2019, not at a deposition in 2022.

14. That Plaintiff Santacruz believed she had an accommodation at work is supported by contemporary medical records. In records maintained by Dr. Luis Torres' office, Ms. Santacruz discusses her problems at work. According to a note made on April 16, 2019, she had contacted Dr. Torres due to her chronic back pain that is made worse after sitting at her job. She needs to get up, at work but can only do so "every few hours." Ex. D-10. On Jan. 29, 2019, she told her doctor that she could get up and walk at work due to her discomfort. But, she also said she could *not* get up and walk around her desk every few hours. Ex, D-10. These records support her testimony that she had an accommodation at work, however imperfect the accommodation was implemented in actual practice.

15. And, in fact, Debra Santacruz discussed her accommodation with Gloria Dominguez, one of the lead agents. Plaintiff asked the lead agent if she could get up and walk around every two hours or so. Gloria said yes, unless the queue was high. Gloria and Debra discussed that accommodation about three times. Ex. C, p. 53. At some point, Gloria discussed it with Blanca who also said okay. Ex. C, p. 54.

## Notice to Employer

16. VIA requested medical records from Health Texas Medical Group. Dr. Torres, Plaintiff's treating physician works for HTMG. Many of those records represent medical records provided to VIA which explain Plaintiff's chronic back pain impairment. See Ex. D-3. The first page indicates it cost Ms. Santacruz $25 for the first FMLA form and $10 thereafter. This page is dated Dec. 11, 2018, which indicates Plaintiff requested FMLA confirmation that day. Ex. D-3, p. Santacruz000839. The second page explains that Plaintiff has "back problems" and decreased FOM (freedom of movement). The upper right hand

8

corner indicates it was sent to "VIA FMLA." Ex. D-3, p. Santacruz000840. The next two pages are dated Aug. 21, 2018 and Oct. 23, 2018. Ex. D-3, p. Santacruz0000848 and 841. There is a work release form dated Oct. 17, 2018, and May 25, 2017. Ex. D-3, p. Santacruz0000843 and 858, respectively. Thus, among the HTMG records, there are forms dated:

- Dec. 11, 2018
- Aug. 21, 2018
- Oct. 23, 2018
- Oct. 17, 2018
- May 25, 2017

Each of these forms concern Plaintiff's return to work at VIA. Add to this list the forms produced by VIA to the EEOC which are dated:

- Dec. 5, 2018
- Dec. 6, 2018
- April 4, 2018

We then see a detailed record of Plaintiff submitting information about her back to her employer over a two year period. All these records come from the same doctor, Dr. Torres. Yet, VIA and Supervisor Dominguez claim to have no knowledge of Ms. Santacruz' back problems.

17. These eight forms cost the Plaintiff $95, for someone who was paid $17.32 per hour. The Court can be certain that Plaintiff was aware of the cost each time she asked Dr. Torres to complete these forms.

## Queue Increases

18. In January, 2019, Supervisor Blanca Dominguez started "mandating" the Reservation Agents. That meant the agents could not take time off or use their vacation time. Two or three agents had quit. The queue on the phone lines was getting longer. Ex. C, p. 63-64. Blanca Dominguez equivocated regarding whether the agents were mandated in 2019. Ex. A, p. 13-14. But, Debra Santacruz recalls clearly.

19. And, in January, 2019, Blanca Dominguez counseled Plaintiff in writing about her absences. See Ex. D-4. The Written Reminder reminds Plaintiff she then had eight attendance points. It reminds Plaintiff that Blanca Dominguez sent Plaintiff an email on Jan. 8 telling her that she had six attendance points. If she reaches fourteen points, then she would be fired. Ex. A, p. 37. Ms. Dominguez was referring to VIA's attendance policy,

9

known as SOP 4.05. See Ex. D-6. This rule makes *no* allowance for disabilities. This rule makes no allowance for the individualized assessment required of the Americans with Disabilities Act.

20. Plaintiff emailed Blanca on Jan. 31, 2019 asking about her points that day. Ex. D-5. She was concerned about her job status. Blanca simply replied to come get her letter. Ex. D-5. On March 9, Blanca issued another Written Reminder to Plaintiff telling her that she now had 10 attendance points. Ex. D-7.

21. On Aril 13, 2019, Saturday, Plaintiff was having a lot of problems with her back. She had eleven points at that point. Plaintiff had a doctor's appointment on April 16, Tuesday. Plaintiff Santacruz called in on April 16, 17, 18 and 19, Friday. Debra lived next door to Gloria Dominguez. Gloria was a lead agent and a cousin to Blanca. Plaintiff would typically call Blanca's phone and leave a message and also tell Gloria, her next door neighbor that she was ill. Ex. D-8. Plaintiff also rode with Gloria to work every day on VIA Trans. Gloria Dominguez had her own impairment and Debra rode to work with her as her helper. On April 20, she rode to work with Gloria, as she did every day. Ex. D-8.

22. At work on April 20, Saturday, Plaintiff saw an email from the FMLA Coordinator, Belinda Guzman, saying her absences that week were *not* covered by FMLA. Ex. D-8. Those four days would cause her to exceed the 14 day maximum. She would be fired from a job she had held for 18 years. Gloria, the lead Agent, told Plaintiff she should talk to Blanca and make sure she was not fired. Ex. C, p. 36. Plaintiff's normal days off were Sunday and Monday. So, she called Blanca Dominguez the night of Monday, April 22, 2019.

## "Tired of Your Shit"

23. Plaintiff called Supervisor Dominguez at 7:09 pm that night. Ms. Dominguez was at a baseball game. Plaintiff testified that Blanca told her she was fired. Blanca told Debra that she was tired of her shit and that she would talk to Daniel Chaipan to let him know she had fired Plaintiff. Ex. C, p. 37. The supervisor said she had been trying to get Plaintiff fired. She had too many absences. Ex. F, p. 3. Shocked, Plaintiff asked her supervisor if this meant she was really fired. Ex. C. p. 39. Plaintiff then texted her again that night, desperately trying to make sure she had really been fired. Ex. C, p. 36. In response to the

10

text, Blanca told Debra to stop harassing her. Ex. C, p. 39. Daniel Chaipan was Blanca
Dominguez' boss. He was the Administrator of the reservations part of the Paratransit
department.

24. Blanca Dominguez remembers the Monday night conversation very differently.
Supervisor Dominguez asserts that Debra Santacruz called her asking for a letter which she
would need to obtain her retirement funds. Supervisor Dominguez insists she said nothing
that night about Plaintiff being fired. Ex. A, p. 34. Dominguez says Santacruz did not ask if
she could come to work the next day. Instead, she informed Dominguez she would not be
coming in the next day. Ex. A, p. 35. But, said the supervisor, Plaintiff did not say she quit.
Ex. A, p. 35. Supervisor Dominguez denies saying that Santacruz had seventeen points. She
was tired of her shit. And, that she would tell Daniel Chaipan the next day. Ex. A, p. 35.

25. And, in fact when Plaintiff applied for unemployment benefits, that was the first
she learned that VIA claimed Debra Santacruz had not been fired that night on April 22,
2019. Ex. F, Santacruz Decl. p.4.

26. Blanca had threatened Ms. Santacruz with termination for her tardies and
absences many times in the past. Plaintiff had no reason to think Supervisor Dominguez
lacked the authority to fire her. Ex. C, p. 177. Plaintiff had every reason to believe Blanca
Dominguez had indeed fired her that night on April 22. Ex. C, p. 177. That belief indicates
why she sent an email on April 20 – during her work day at VIA – to the FMLA Coordinator,
Belinda Guzman asking if she still had a job. Plaintiff explains in that April 20 email, sent at
11:51 a.m. that she was in a lot of pain those four days up to April 19. Ex. D-9. Ms. Guzman
could not assure the Plaintiff she still had a job. She simply told Ms. Santacruz that she
would look into it and get back to Santacruz and Blanca. Ex. D-9. It is counter-intuitive to
think Santacruz would be begging for her job on April 20, but have already decided to quit
on April 22.

27. Yes, Plaintiff requested her retirement account. When she believed she had been
fired, she sought the only source of income she could locate. She did call Blanca Dominguez
seeking help with obtaining those funds. But, that was one of her last phone calls, not the
first. Ex. C, p. 35, 40. That phone call to Ms. Dominguez when she requested help with the
retirement money was the next day *after* April 22. Ex. C, p. 40-41.

28. In May, Sylvia Castillo sent Plaintiff a letter saying Ms. Santacruz had resigned. But, that was not accurate. Plaintiff had no income at the time and did not resign.

*Argument*

1. The Defendant has mis-stated evidence or pointed to evidence in a mis-leading way.

In reviewing a motion for summary judgment, the court must view all the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Tolan,* 572 U.S. at 660; *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). The Defendant does not draw reasonable inferences in favor of the non-movant. It actually mis-cites much of the evidence and draws all possible inferences in favor of the movant.

**Prior Attendance Problems**

For example. on the second page of its Brief, Defendant notes that Plaintiff suffered prior problems with attendance issues. MSJ, p. 2. But, it fails to mention that those problems occurred in 2002, seventeen years prior to Plaintiff's termination. See Def's Ex. A, pp. 26-27, 31. In fact, Defendant did not attach the actual written warning from 2002. See Pl's Ex. C, Ex. 6, March 22, 2002 Memo. The Memo regarding her absences and tardies is dated March 22, 2002. This 2002 Memo is never mentioned in any paper supporting the termination of Plaintiff.

In some instances, the Defendant cites to deposition testimony inaccurately. Defendant points to Plaintiff's supposed testimony at p. 20 to say she was familiar with VIA's EEO policies. MSJ, p. 3. But, in reality on page 20, she simply said she was aware the policy existed. See Def's Ex. A, p. 20/ l.14-18. Ms. Santacruz did not claim to be familiar with those policies.

**Call-in Policy**

Defendant claims on page 4 of its MSJ that VIA's policy required Reservation Agents to "call and speak" (emphasis the Defendant's) with their supervisor that they would be late or absent. MSJ, p. 4.  But, the word "call" does not appear in those fifteen pages that comprise Def's Ex. F. Neither does the word "speak."  One section explains how to request time off. See Ex. F, pp. 10-11.  But, this section only explains how to fill out a form. It does not describe how or when to call in sick.  Blanca Dominguez *did* say a Reservation Agent should call her when they will be ill. Def's Ex. B, p. 33.  But, that was her policy, not VIA's.

And in any event, Plaintiff disagreed that that was her policy. Plaintiff said Blanca's policy was that the Agents call Blanca first and then Gloria Dominguez when they would be out ill. Ex. C, pp. 177-178. Or, the agent could text Blanca or Gloria. Ex. F, p. 1.

## Called in on April 19

On page 4 of its MSJ, VIA claims Plaintiff failed to call in for her absence on April 19, 2019. It points to Blanca Dominguez' testimony as support. But, as Defendant mentions, Plaintiff said she *did* call Blanca on April 19, 2019. Ex. C, p. 34 (Left a voice mail on Blanca's phone and spoke with Gloria), p. 177 (Plaintiff first left a phone message on Blanca's answering machine, because Blanca would never answer when the agents called); Ex. F, p. 1 (Plaintiff called Blanca at work and on her cell phone and called Gloria). Then, Plaintiff walked to Gloria's house next door and told her. Ex. C, p. 178 (walked to Gloria's kitchen). When Debra went to Gloria's kitchen early that morning on April 19, Gloria said they would see what Blanca decides about firing Debbie. Ex. C, p. 178. Debra and Gloria were neighbors at the time.

Plaintiff sent text messages to Gloria and Blanca at 6:40 and 6:54 a.m. on April 19. She texted Gloria first, because that is what Blanca told them to do. Ex. F, p. 1.[1] Then, not hearing from Gloria, Ms. Santacruz called Blanca at work at 9:11 a.m. Ex. F, p. 1. Defendant claims the phone records do not support Plaintiff's testimony. MSJ, p. 4. But, Defendant is not reading the phone records correctly. As Plaintiff says, the only person she would have called as early as 9:11 a.m. would have been work persons. Ex. F, p. 1. In any event, a reasonable jury could accept Plaintiff's version of events. Summary judgment does not involve weighing evidence.

Plaintiff also sent an email to Belinda Guzman, the FMLA Coordinator on April 20 asking about her points. Ex. C, p. 178, Ex. D-9. She was concerned about her job.

Too, as Ms. Dominguez mentioned in her text message to Daniel Chaipan on April 29, Blanca apparently gave credit to Plaintiff for Friday, April 19 because she called Blanca on April 22, 2019. See Def's Ex. I, p. Dominguez00006. Defendant claims that Blanca Dominguez would consult with VIA's FMLA coordinator, Belinda Guzman, regarding any

---

[1] For the sake of clarity, Plaintiff is using the phone messages as provided by Defendant in its Ex. G. But, Plaintiff has attached more legible copies behind each page of Defendant's exhibit.

13

FMLA absence to find out if it was covered by her FMLA leave. MSJ, p. 4 n. 2. But, that is not what Blanca says in her April 29 text. In that text message, Blanca makes the decision herself to give Plaintiff credit for April 19, because Plaintiff called her on April 22. Blanca is not asking anyone:

> "So her official awol days was last Wednesday right?
> Friday before that she was a no show but then she talked to me
> on Monday night and said she not coming in on Tuesday."

Def's Ex. I, p. Dominguez00006. Blanca is telling Daniel Chaipan that since Debbie called in on Monday, April 22, that somehow excuses her from allegedly being AWOL on Friday, April 19. These words, as written, indicate Supervisor Dominguez is making this decision herself, not Belinda Guzman, the FMLA Coordinator.

## April 20

Defendant also claims "no one informed [Plaintiff] that her employment had been terminated" on April 20, Saturday. MSJ, p. 4. But, Defendant completely overlooks Plaintiff's testimony that Gloria Dominguez told her on that work day, April 20 that she should call Blanca to make sure she has not been fired. Ex. C, p. 36 ("Because when I went to work with Gloria on Saturday, she told me she didn't know if Blanca had fired me yet and I had to call to make sure I wasn't terminated"), 177 (Gloria said she did not know what Blanca had decided yet about firing Plaintiff), p. 180 (Gloria allowed Debra to work on Saturday, but did not know what Blanca had decided about firing her). So, yes, Gloria never told Plaintiff on April 20 that she had been fired, but that is a very small part of the story. A reasonable jury could well find that on April 20, both Gloria and Ms. Santacruz knew Plaintiff's future at VIA was very much in doubt.

## Not Yet "Officially" Fired

Defendant asserts that the text message traffic between Blanca Dominguez and Debra Santacruz makes it clear that Plaintiff was *not* fired as of the date of the text, April 23. MSJ, p. 6. But, that is not the only possible inference. The text message says Plaintiff has not been "officially terminated" yet. Def's Ex. I, p. Dominguez00001. But, not being "officially terminated" is not the same as not terminated at all. As Plaintiff said in her deposition, she assumed from that comment by Blanca that Blanca had spoken with Sylvia Castillo and Daniel Chaipan and they told her to say that. In Plaintiff's prior 18 years, Blanca had always

14

threatened Debra with termination. Ex. C, p. 177. Or, Blanca could have simply been saying Debra was in fact fired, but the paper work was not yet completed. Ex. F, p. 5. And, that is what the rest of the April 23 text messages provide, that the termination process takes time. Ex. I, pp. Dominguez00003-00004. Certainly, a reasonable jury could find that the phrase "officially terminated" refers to the lengthy process required to fire an employee, not regarding whether she has in fact been fired.

Too, these text messages do not represent the sum total of the discussion between Santacruz and Blanca on April 23. Plaintiff testified there were more discussions and more text messages than the four pages produced by Supervisor Dominguez. Ex. C, p. 40/ l.7-9; Ex. F, p. 5. See Plaintiff's Motion to Strike this evidence. These text messages are not complete. Ex. I lacks any foundation.

## Plaintiff Losing Her Accommodation

Defendant also claims Plaintiff admitted that she never complained about losing her accommodation. MSJ, p. 7. VIA points to page 193-194 of Plaintiff's deposition. But, neither one of those pages includes any testimony about Plaintiff losing her accommodation. The word "accommodation" does not appear in either of those two pages. But, even so, until she was fired for too many points, it was not clear that her accommodation of walking around and stretching would not be honored. As recently as April 16, she was allowed time off to see her doctor regarding her back. See Ex. D-10. Those April 16 medical notes record that Ms. Santacruz said she was allowed to walk round, but only every few hours. Ex. D-10, p. Santacruz000766. As far as Plaintiff knew on April 16, she still had an accommodation, however imperfectly it was implemented.

## A "Thorough" Investigation

Defendant makes the remarkable claim that VIA's EEO officer conducted a "thorough" investigation into Plaintiff's EEOC charge. MSJ, p. 7. VIA points to Claudia de Gonzalez' deposition for support. But, the word "thorough" does not appear in Ms. de Gonzalez' deposition anywhere. And, in fact, Ms. de Gonzalez said herself that a more complete investigation would have included talking to Ms. Santacruz herself. Ex. B, pp. 16-17.

15

Defendant also claims erroneously that Plaintiff admitted her disability does not affect a major life activity. MSJ, p. 9. But, the pages it cites actually say the opposite, that she is fine so long as she can get up and move a little. Def's Ex. A, p. 56. And, of course in Plaintiff's other testimony, she described an impairment which does indeed affect a major life activity. When her back flares up, "I can't really bend . . . There's been a few days where I can't really bend and I can't sit too long." Ex. C, p. 169. She could walk when the back flares up, but not as far. Ex. C, p. 169. If Ms. Santacruz cannot bend her body, then she cannot dress herself. She cannot perform a wide range of daily activities.

Plaintiff had to do stretches at work to relieve her back. She would literally hang on the back of her chair and stretch her back. Ex. C, p. 170.-172. Her co-workers joked that she was a bat. Ex. C, p. 172. Once, Daniel Chaipan walked through the work area and noticed Ms. Santacruz doing her stretches. He asked Blanca what Debra was doing. Blanca replied, "She has a bad back." Ex. F, p. 2. Even during the deposition, Plaintiff complained that as the deposition went on, her back was hurting and it would help if she could stand. Ex. C, p. 200, 212. In fact, Ms. Santacruz later in her deposition avoided standing, because if she stood, the Defense attorney would insist on taking a break. Taking a break from the deposition would then prolong the deposition and the pain.

## VIA Confused

Defendant VIA Metropolitan is confused about the evidence. It claims Debra Santacruz *did* receive her requested accommodation for her back. MSJ, p. 19. Yet, it also admits that its key witness, Blanca Dominguez denies Santacruz ever requested an accommodations for her back. MSJ, p. 19 n.6. But, then at the bottom of page 19, it also claims there is *no* evidence that Santacruz ever requested an accommodation.[2] MSJ, p. 19-20.

2. The Plaintiff satisfies the prima facie elements for failure to accommodate.

The elements of a failure-to-accommodate claim include that the plaintiff 1) has a disability; 2) was qualified for the position; and 3) was discriminated against because of her

---

[2] Defendant assumes Plaintiff's own testimony is somehow not evidence. That assumption contradicts *Heinsohn. Id,* 239, 241, 242 (Finding that the plaintiff's testimony about and knowledge of several issues regarding her work performance created fact issues which precluded summary judgment). By choosing which testimony to credit and which to discard, a court improperly weighs the evidence and resolves disputed issues in favor of the moving party. *Id,* at 245.

disability. *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007); *Moss v. Harris County Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017). Discrimination includes failing to provide a reasonable accommodation. 42 U.S.C. § 12112(b)(5)(A).

Plaintiff submitted many documents to her employer regarding her chronic back pain. Those documents were submitted pursuant to her intermittent FMLA leave. See Ex. D-3, p. Santacruz 00840 ("back problems" for 2 and ½ years). All the records included at Ex. D-3 originate from the office of Dr. Luis Torres, Plaintiff's treating physician for her chronic back pain. See, also, Ex. D-10, records dated Jan. 29, 2019 and April 16, 2019, p. Santacruz 000766 ("back pain, problems at work-cubical for 8 hours, rr [restroom] breaks only allowed 4 minutes and singled out when takes longer") ("low back pain"), p. Santacruz 000771 (""chronic low back pain") ("she works for VIA and has trouble with work . . . she is timed to go void . . . states she gets up and walks at work due to her discomfort. She states she is not able to get up and walk around. She states she does not think she can do a standup desk. She states that she has been doing her exercises"). Each pf these documents were submitted to VIA.

In 2020, in response to the EEOC charge, VIA submitted an attachment to its position statement that said Debra Santacruz is a "50 y/o (year old) female č (with) chronic back pain" and "50 y/o (year old) c/o (complaining of) back pain and decreased FOM (freedom of movement])." Facts, para. 11, supra. Another attachment said: "To help rest her back & relieve pain, patient will be on meds that cause drowsiness." These were papers submitted to VIA by Dr. Torres. Facts, para. 11, supra. As VIA's EEO Officer Claudia de Gonzalez testified, this information provided by Dr. Torres suggests the person may need an accommodation to help her perform the functions of her job. Ex. B, p. 29. These papers put the employer on notice that the Plaintiff probably needed an accommodation.

An employer must accommodate a disability about which it has knowledge. *See. e.g. EEOC v. Convergys Customer Management Group*, 491 F.3d 790 (8th Cir. 2007) (Employer did not develop a plan to address the needs of the plaintiff who used a wheelchair, despite the company's awareness of the problems the plaintiff encountered at work); *Cravens v. Blue Cross & Blue Shield of Kansas City*, 214 F.3d 1011 (8th Cir. 2000) (Employer knew about the employee's carpal tunnel, so it should have initiated the interactive process to find an

17

accommodation); *EEOC v. Chevron Phillips Co.*, 570 F.3d 606, 621-22 (5th Cir. 2009) (a doctor's medical release to work note adequately requested an accommodation. Where the disability, resulting limitations, and necessary reasonable accommodations, are open, obvious, and apparent to the employer, the burden then shifts to the employer to suggest a reasonable accommodation). Nothing in these cases provide that notice cannot originate with FMLA requests.

In EEOC Enforcement Guidance, the EEOC addresses the situation in which an employer learns about an impairment through a request for FMLA leave. If an employee requests time off for a reason possibly related to a disability, the employer should treat this as a request for accommodation under the ADA as well as a request for FMLA leave. "The Family Medical Leave Act, The Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964," Ques. No. 16, available at: https://www.eeoc.gov/laws/guidance/family-and-medical-leave-act-americans-disabilities-act-and-title-vii-civil-rights.

Defendant is correct that simply requesting FMLA leave does not necessarily amount to a request for an accommodation. MSJ, p. 10. *See Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791–92 (5th Cir. 2017) (request for FMLA leave will not serve as an accommodation request). The *Acker* court noted that a request for leave under the FMLA indicates the employee cannot perform the functions of the job. While, a request for accommodation under the ADA indicates an employee can perform the functions of the job with the requested accommodation. *Acker*, at 791-792. But, that reasoning does not pertain here. Plaintiff submitted her FMLA requests, and she also verbally requested an accommodation. And, too, that reasoning does not really make a difference. There is nothing in either statute which makes it impossible for a worker to independently satisfy both the FMLA and the ADA.

Too, in *Acker*, the employee simply requested leave. He did not describe his actual diagnosis or how his impairment limits his functioning at work. Ultimately, the employee was fired for not complying with the requirement to call in sick on a timely basis. *Acker*, at 789-90.

As Ms. Santacruz testified several times, she discussed her need to get up and walk around several times with Gloria and Blanca Dominguez, or to take pain pills. See Ex. C, p. 52/ l.3-10, p. 52/ l.22 – p. 53/ l.15 (noting that Gloria always spoke for Blanca), p. 54, p.

18

169/ l.3-20.  Debra Santacruz sent an email to Blanca confirming her informal
accommodation in which she could take pain pills, so as to continue working. Ex. D-11.

Many courts have disagreed with the holding in *Acker*. In *Capps v. Mondelez Glob.,
LLC*, 847 F.3d 144, 156–57 (3d Cir. 2017), the Third Circuit noted that a request for
intermittent medical leave under certain circumstances amounts to a request for
accommodation under the ADA. 29 C.F.R. § 825.702(c)(2) specifically provides that a
request for leave under the FMLA may also be treated as a request for accommodation under
the ADA. *See, also, Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 n.2 (D.C. Cir.
2020) (Noting that a request for leave may trigger both the ADA and the FMLA, if the
language in the request satisfies both statures independently); *George v. Community Health
Centers Inc.*, No. CIV-21-00464 (W.D. Okla. 3/8/2022) (Finding issue of material fact
whether a text message needing 30 days inpatient and mentioning the FMLA amounted to a
request for accommodation under the ADA); *Schobert v. CSX Transp., Inc.*, 504 F.Supp. 3d
753, 787 (D.C. Ohio 2020) (recognizing that a medical leave of absence can constitute a
reasonable accommodation under the ADA in appropriate circumstances); *Hurtt v.
International Services*, 637 F.Appdx. 414, 423 (6th Cir. 2016) (recognizing a request for
FMLA leave as a request for a reasonable accommodation under the ADA); *Scruggs v.
Pulaski County, Arkansas*, 817 F.3d 1087, 1093 (8th Cir. 2016) (Recognizing that providing
leave beyond the 12 weeks allowed under the FMLA amounts to an accommodation under
the ADA); *Johnson v Norton County Hosp.*, 550 F.Supp. 3d 937, 954 (D. Kan. 2021) (A
request for leave under the FMLA may constitute a reasonable accommodation under the
ADA); *Hoggatt v. Electrolux Home Products, Inc.*, 2010 WL 5211604, at \*8 (M.D. Tenn.
2010) (processing leave request only under FMLA, and not as request for accommodation
under the ADA, may reflect failure to engage in interactive process).

In *Dillard v. City of Austin, Texas*, 837 F.3d 557, 561 (5th Cor. 2016), the employer
became aware of the disability and need for accommodation through the FMLA request
submitted by the plaintiff.  The court found the employer had an obligation under the ADA to
accommodate the employee after his FMLA leave ran out.  The expiration of that FMLA
leave triggered a duty to engage with the employee in an interactive discussion regarding an
accommodation. *Dillard*, at 562. *See, also, Kowitz v. Trinity Health*, 839 F.3d 742, 747 (8th

Cir. 2016) (Finding that a request for FMLA leave for neck surgery constituted a request for accommodation under the ADA. The employer was aware of the plaintiff's specific condition and of her limitations due to the prior leave for neck surgery).

But, Plaintiff's situation differs from these other cases in one important respect. Her request for FMLA leave simply amplified her request for accommodation. She also made direct, verbal requests for accommodation to her supervisor, Blanca Dominguez and to her lead agent, Gloria Dominguez. A reasonable jury could dis-believe Blanca's testimony that she knew nothing about Plaintiff's chronic back pain and her need for Ibuprofen.

### Request for Accommodation Need not Be Written

An employee need not request an accommodation in writing. The request need only be in plain English so as to notify the employer of a need. *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 955 (8th Cir. 1999) (A worker need not use the magic words "reasonable accommodation"); *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 997 (D. Ore. 1994) (The ADA does not require the plaintiff to speak any magic words when requesting an accommodation. The employee need not mention the ADA or even the term "accommodation). A request for an accommodation made by an employee's son, while the employee was in the hospital, was sufficient to trigger the employer's obligation to engage in the interactive process to arrive at an accommodation. *Taylor v. Phoenixville School District*, 184 F.3d 296 (3d Cir. 1999); *see, also, Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008) (Where employee's disability and need to accommodate are obvious, employee need not expressly request accommodation). A reasonable jury could find Blanca and Gloria were both aware of Plaintiff's need for accommodation for her back.

### Alleged Stove-Piped Information

The employer makes the remarkable claim that the front line supervisors, Blanca Dominguez and Gloria Dominguez would not have been aware of Plaintiff's FMLA requests, because such requests were "confidential." MSJ, p. 10. VIA is suggesting – without actual testimony or evidence - that the FMLA requests were somehow stove-piped in a way which would preclude the FMLA Coordinator, Belinda Guzman, from sharing information with the two supervisors. But, a lawyer's theory of the evidence is not evidence.

Moreover, this theory ignores the reality that the approval of FMLA leave by the FMLA coordinator was a new procedure. It was instituted with a March 7, 2019 email from Blanca Dominguez to the Reservation Agents. Before March 7, 2019, an employee seeking intermittent FMLA leave would send the necessary paper work to Blanca Dominguez. Ex. F, p. 6; Ex. C, p. 29-30. So, under the old system, Blanca or Gloria would have received all of Debbie's FMLA requests. So, the even by March 7, 2019, the two supervisors had a two year history with Plaintiff's disability. See Facts para. 16. That is why Plaintiff thought Blanca may have been adding too many absences to her record. See Ex. C, p. 167. Blanca herself controlled how her absences were coded up to March 7, 2019.

But, even under the new system, the information would *still* be sent to Blanca Dominguez. The only change was to add that the paper work would *also* be sent to Belinda Guzman, the FMLA Coordinator. See Ex. D-13, para. 3 (Blanca's email noting that the FMLA papers would still be sent to Blanca). Indeed, the available evidence shows that Plaintiff submitted her FMLA paper work *to* Gloria. As Plaintiff said in her deposition, she generally gave the medical notes to Gloria. Ex. C, p. 187-188. *See, also* Ex. D-14, April 17-18, 2019 Attendance Reports, Medical Records. Plaintiff submitted these medical records regarding her April 17 and 18 absences. She gave them to Gloria Dominguez. Two pages are signed by Gloria Dominguez. Ex. D-14, p. DS000043, 000045. Both appointment cards refer to HTMG and Dr. Torres. These appointments were for her back.

The two Attendance Reports are VIA forms, signed by the lead Reservation Agent. Yet, these papers marked as Ex. D-14 were *not* produced by VIA. They were retained by Plaintiff. So, if the FMLA papers went to Blanca and Gloria before *and* after March, 2019, then Blanca and Gloria were both aware of Plaintiff's chronic back pain. Defendant is attempting to deceive the Court.

3. A reasonable jury could find that Plaintiff was fired.

Defendant weighs the facts and concludes that the evidence favors a finding that Plaintiff resigned. The employer frankly admits it is weighing evidence: "The competent summary judgment evidence supports the plain conclusion . . ." MSJ, p. 12. The employer concludes that Blanca did not have the authority to fire Plaintiff. Yet, that is Plaintiff's testimony. Defendant argues Plaintiff's testimony is "self-serving." MSJ, p. 12, 13. But, as

21

the Fifth Circuit observed, Plaintiff's statement is no more and no less self-serving than that of the management witnesses. *Heinsohn v. Carabin & Shaw*, 832 F.3d 224, 245 (5th Cir. 2016). In arguing that Plaintiff's testimony should be minimized or disregarded, Defendant is weighing the evidence. A court may not make credibility determinations at the summary judgment stage. *Chambers v. Sears Roebuck & Co.*, 428 Fed. Appdx. 400, 407-408 (5th Cir. 2011); *Matter of Green*, 968 F.3d 516, 520 n.6 (5th Cir. 2020).

Plaintiff testified that Daniel Chaipan told her that if Blanca said she was fired, then she was fired. Ex. C, p. 45-46. That testimony is not rebutted. Sylvia Castillo also told Plaintiff in the days after April 22 that if Blanca fired you, then you were fired. Ex. F, p. 4. A reasonable jury could conclude that Sylvia Castillo is not telling the truth about who had termination authority. Ms. Castillo has changed her story. It is unrebutted that Blanca claimed the authority to fire Paratransit employees for years.

A former Paratransit Reservation Agent said Blanca also fired her in 2018. See Ex. G, p. DS0000389. Plaintiff testified several times that Banca fired her. Blanca told Plaintiff she was "tired of your shit." Blanca said she had been trying to get Debra fired. Facts, para. 23. Norma Garcia was a friend of Plaintiff's. She happened to drive up to Ms. Santacruz' house just as she was getting fired. She talked to Debra immediately after her firing, a "shocker" for Plaintiff. Ms. Garcia was present for the end of the phone call with Blanca in which the supervisor fired Plaintiff. Garcia watched as Santacruz tried to call Blanca back. Ex. C, p. 99. Santacruz told Garcia that she had just been fired. Ex. G, p. DS0000389; Ex. F, p. 4. Ms. Garcia's testimony qualifies as an exception to hearsay, because her observations were made in the immediate aftermath of a shocking event. Fed.R.Ev. Rule 803(1) and (2). It was the same as if Norma Garcia had come upon an automobile collision. There is substantial evidence upon which a reasonable jury could find Plaintiff was fired and did not resign. There is no need for "corroboration" at the summary judgment stage. MSJ, p. 13. *See Heinsohn*, at 245; *Green*, at 520 n.6. In any event, the credibility of Blanca Dominguez has been impeached.

Supervisor Dominguez has contradicted contemporary, written records several times in this suit. Those instances can be summarized as follows:

| Blanca testimony | Contemporary, written record |
| --- | --- |
| Blanca never saw or heard of Debra taking Ibuprofen or pain pills at work. Ex. A, p. 22 | 2018 email: Debra tells Blanca she took 6 pills the day before and was feeling bad enough that she will need to go home. Ex. D-11 |
| Blanca never timed Debra on her bathroom breaks. Ex. A, p. 14 | Medical records from January & March, 2019 record that Debra reported she was timed on her bathroom breaks. Ex. D-10, p. Santacruz 000766, 0000771 |
| Blanca said she knew nothing of Debra's chronic back pain. Ex. A, p. 18, 25-26 | Blanca's March 7, 2019 email: all FMLA paper work will continue to come to Blanca, but now also to Guzman |
| Blanca claimed to be unaware Debra needed to get up and walk around at work. Ex. A, p. 27 | Medical record from April, 2019 recorded that Debra needs "to get up but can only do that every few hours" at her job. Ex. D-10, p. Santacruz 000766 |
| Blanca wrote letter regarding Debra, but signed by Sylvia Castillo. Def's Ex. I, p. Dominguez 00006 | |

## April 22

Plaintiff called Blanca Dominguez at 7:09 p.m. the night of April 22, asking if she still had a job. Facts, para. 23. Blanca Dominguez testified differently. The supervisor said the April 22 phone call between her and Debra Santacruz was only about how to obtain 401K funds. Ex. A, p. 34-35. Ms. Dominguez denied Santacruz asked if she could work the next day, Tuesday, April 23. Instead, Santacruz informed - according to Blanca - she would not be in to work the next day. Ex. C, p. 35. Supervisor Dominguez is claiming that the person who emailed Belinda Guzman asking about her points on April 20 had already decided by April 22 to quit an 18 year career. That the person who was so concerned on April 20 about whether she had been fired had already decided by April 22 to quit.

Ms. Dominguez also denied telling Plaintiff she was tired of her shit during that April 22 phone call. She denied telling Plaintiff she already had 17 attendance points. Ex. A, p. 35. She denied hanging up on Plaintiff. Ex. A, p. 36. She denied that Plaintiff tried to call Blanca back. Ex. A, p. 36. But, Plaintiff remembers differently. She remembers that she *did* try to call Blanca back, after Blanca hung up on her. Ex. C, p. 39. But, Blanca would not answer her phone. Instead, she texted Plaintiff back, and told Debra to stop harassing her.

23

Ex. C, p. 39. And, that is what the phone records show. The phone records show a text from phone number 210-974-7489, Blanca's phone number, at 9:05 p.m. on April 22. See Ex. F, Phone Records, p. DS0000619 (see more legible copy behind page DS0000619). A reasonable jury could conclude that Plaintiff did - as she said – try to call Blanca on April 22 after the supervisor hung up on her.

4. Defendant discriminated against Plaintiff on the basis of her disability.

In addition to failing to accommodate, the employer also discriminated against Plaintiff due to her impairment. She was timed on her bathroom breaks . Blanca "singled her out" if she exceeded four minutes. Ex. D-10, p. Santacruz0000766. Plaintiff was "timed to go void." Ex. D-10, p. Santacruz0000771. She was *not* allowed to get up and walk around at some point in January, 2019, but she needed to do so due to discomfort. Ex.. D-10, p. Santacruz0000771. According to these contemporary records, Plaintiff's bathroom breaks were scrutinized at work. She was also not allowed to get up and walk around at some point in January, 2019. Although, another record states that in April, 2019 she was allowed to get up and walk every few hours. Ex. D-10, p. Santacruz0000766.

She was called a "bat" by Blanca and Gloria at work, because of her chair stretches. Ex. C, p. 65-66. Blanca and Gloria harassed Plaintiff due to her back problems. They bullied her. Gloria and Blanca tried to pretend Debra's back problems were not real. Ex. G, p. 2. Blanca and Gloria harassed workers who had medical problems. Ex. G, p. 1. Blanca threatened to fire Plaintiff many times, perhaps every month, due to her absences. Ex. F, p. 3; Ex. C, p. 157, 177. Blanca fired Norma Garcia due to her tardies, even though Ms. Garcia believed them to be covered by FMLA. Ex. G, p. DS0000389.

Plaintiff testified that when she called Blanca, she was immediately angry. She told Plaintiff she was "tired of your shit." Facts, para. 23. Plaintiff said when she tried to call Blanca again that night on April 22, Blanca told Debbie to stop harassing her. And, in fact, Blanca told Plaintiff twice to stop harassing her with questions about the process for obtaining her 401K funds on April 23. Def's Ex. I, p. Dominguez 00004. There is substantial evidence upon which a reasonable jury could find that Defendant discriminated against Plaintiff due to her disability.

24

*Conclusion*

There are very many factual inconsistencies in this matter. Blanca Dominguez' testimony differs dramatically from Ms. Santacruz'. The parties even disagree whether Plaintiff was fired. A reasonable jury could find that Plaintiff was fired. A reasonable jury could also find that Plaintiff was fired due to her disability and was denied an accommodation to which she was entitled.

WHEREFORE, Plaintiff prays that Defendant's motion for summary judgment be denied, and for all relief, at law and in equity, to which she may be entitled.

Respectfully submitted,

Thomas J. Crane
T.S.B. No. 05007320

LAW OFFICE OF THOMAS J. CRANE
900 N.E. Loop 410, Suite D306
San Antonio, Texas 78209
(210) 736-1110
(210) 745-4258
tom@cranelawyer.net

Attorney for Plaintiff

Certificate of Service

I certify that a true copy of the foregoing instrument was electronically filed on the
11th day of August, 2022 with the Clerk of Court using the CM/ECF system
which will send notice of such filing to the following counsel:

Katherine A. Zampas
Dykema Gossett, PLLC
112 E. Pecan St, Suite 1800
San Antonio, Texas 78205

Thomas J. Crane

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBRA SANTACRUZ, *Plaintiff* | § | |
| | § | |
| v. | | CIVIL ACTION NO. |
| | § | 21-CV-00719-FB |
| VIA METROPOLITAN TRANSIT, *Defendant* | | |
| | § | |

## ORDER

On this day came to be heard the Defendant's Motion for Summary Judgment.

Having heard argument of counsel and having reviewed the motion and attachments, it appears that the motion lacks merit.

It is therefore:

ORDERED that:

Defendant's motion be DENIED. There are substantial issues of material fact in this matter.

SIGNED AND ENTERED this _____ day of _____, 2022.

_____
FRED BIERY
U.S. DISTRICT JUDGE