# EXHIBIT B
# CLAUDIA DEGONZALEZ DEPOSITION EXCERPTS

```
 1                UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF TEXAS
 2                    SAN ANTONIO DIVISION

 3   DEBRA SANTACRUZ                )
          PLAINTIFF,                 )
 4                                   )
     VS.                             )  CIVIL ACTION NO.
 5                                   )  21-CV-00719-FB
                                     )
 6   VIA METROPOLITAN TRANSIT,       )
          DEFENDANT.                 )
 7
                                             COPY
 8

 9   *********************************************************

10                    ORAL DEPOSITION OF

11                    CLAUDIA DE GONZALEZ

12                      JUNE 14, 2022

13   *********************************************************

14

15

16      ORAL DEPOSITION of CLAUDIA DE GONZALEZ, produced

17   as a witness at the instance of the Plaintiff, and

18   duly sworn, was taken in the above-styled and numbered

19   cause on the 14th day of June, 2022, from 9:31 a.m. to

20   10:14 a.m., before Sharon L. McDonald, CSR, in and for

21   the State of Texas, reported by machine shorthand, at

22   the offices of Dykema Gossett, PLLC, 112 E. Pecan

23   Suite 1800, San Antonio, Texas, pursuant to the

24   Federal Rules of Civil Procedure and the provisions

25   stated on the record or attached hereto.
```

```
 1  that training once a year or once a quarter or how would
 2  that work?
 3       A    Biannual.
 4       Q    And after COVID, will it still be biannual?
 5       A    Yes, sir.
 6       Q    Would you turn to the next page, please?
 7  There's no page numbers, but we can -- if we go by --
 8  anyway, I can walk through it without having to refer to
 9  page numbers, I think.  So there's a section on this page
10  that says Exhibit G, time and attendance spreadsheet and
11  policy.  Do you see that section?
12       A    Time and attendance, yes.
13       Q    And then at the bottom of that paragraph it
14  says:
15                 Assuming that Ms. Santacruz was
16       disabled, which VIA denies, Ms. Santacruz never
17       informed anyone at VIA of this, nor did her
18       physician's statement indicate that she required
19       accommodations like short breaks to walk around.
20                 Did I read that correctly?
21       A    Yes.
22       Q    The first part of that -- the first part of
23  that, Santacruz never informed anyone of this disability,
24  how do you know that to be -- when you wrote this, how
25  did you know that to be so?
```

```
 1      A    Her supervisor, the paratransit administrator
 2 and the manager were not aware.
 3      Q    So you rattled off a lot of job titles there.
 4 Does that mean Blanca Dominguez --
 5      A    Yes.
 6      Q    -- Sylvia Castillo and Daniel --
 7      A    Daniel Chaipan.
 8      Q    They all said the same thing?
 9      A    Yes.  They were not aware.
10      Q    And you mentioned her physician's statement did
11 not indicate accommodations like short break to walk
12 around.  Did you look at physician's statements when you
13 wrote this?
14      A    (No verbal response.)
15      Q    Or were you relying on someone to tell you what
16 the physician's statement said?
17      A    I saw her FMLA paperwork and notes provided for
18 her work release.
19      Q    We're only asking you today what you recall,
20 your best memory.  And you're able to provide that; is
21 that correct?
22      A    I'm sorry.  Can you repeat that again?
23      Q    We're only asking you today to provide to us
24 what your best recollection is.  I'm not asking you to
25 remember everything, just whatever you remember today.
```

```
 1      Q     Did Chaipan or Castillo tell you that Santacruz
 2  had abandoned her job?
 3      A     Daniel Chaipan instructed Ms. Dominguez[sic] to
 4  return to work.
 5      Q     And you base that on what Daniel Chaipan told
 6  you?
 7      A     Yes, sir.
 8      Q     Because you never talked to Santacruz yourself?
 9      A     No.  Ms. Santacruz, no.
10      Q     What did Castillo tell you?
11      A     She asked her to return to work.
12      Q     And, again, you only know what Castillo told
13  you, correct?
14      A     Yes.
15      Q     In a perfect world, would you have talked to
16  Santacruz and asked her what happened?
17            MS. MCELROY:  Objection, calls for
18  speculation.
19      Q     (BY MR. CRANE) You can answer.
20      A     You asked in a perfect world.
21      Q     In a perfect world, perfect investigation,
22  everything is the way you want it to be, based on your
23  training and experience, would you have wanted to talk to
24  Santacruz before you sent this letter?
25            MS. MCELROY:  Objection, calls for
```

1  speculation.
2  A    I would have liked to have talked to her.
3  Q    (BY MR. CRANE) Do you believe the resignation or
4  termination of Santacruz, that everything was done the
5  way it should have been?
6  A    Ms. Santacruz abandoned her job.
7  Q    So you believe -- your answer would be yes,
8  everything was done the way it should have been done?
9  A    They asked her to return to work and she
10 abandoned her job.
11 Q    So on that same page further down, the sentence
12 starts:
13              On April 23, 2019, Santacruz spoke with
14      Sylvia Castillo. At this time, Ms. Castillo had no
15      knowledge of any alleged termination effort against
16      Santacruz and asked Santacruz to return to work.
17              You may have already said this, but I just
18 want to make sure the record is clear. So this sentence
19 is based on your conversation with Castillo?
20 A    Yes.
21 Q    Is there a form at VIA that a person should fill
22 out when they want to request an accommodation?
23 A    They can speak to the ADA manager.
24 Q    So if somebody wants to request an
25 accommodation, is that what they should do, talk to the

1  question.
2           And then you go on down: Is employee
3  unable to perform any of her job functions due to this
4  condition?
5           Yes.
6           If so, identify the job functions the
7  employee is unable to perform.
8           Do you see where I'm reading?
9           And then the doctor's answer is: When
10 flareup occurs, patient has trouble sitting for prolonged
11 periods of time.
12          Do you see that portion?
13     A    Yes.  It cuts off.
14     Q    If you go to the second one, it's more readable,
15 the second certification.  I can help you.
16          So here's the second certification, and if
17 you go to right here, to this portion there, under
18 Paragraph 3, the doctor's notes say, When flareups occur,
19 patient has trouble sitting for prolonged periods of
20 time.  Do you see that section?
21     A    Yes.
22     Q    When you saw that in 2019, did you -- did you
23 notice this in 2019 when you sent these papers to the
24 EEOC?
25     A    I may have.

1  Q   As a person who's trained in EEO and who
2  provides EEO training, does this sound to you like
3  someone who may need an accommodation?
4  A   She may have needed.
5  Q   What's your understanding of the purpose of an
6  accommodation?
7          MS. MCELROY:  Objection to the extent it
8  calls for a legal conclusion.
9  A   It helps the employee with additional help if
10 need be.
11 Q   (BY MR. CRANE) To perform a task at work; would
12 that be fair to say?
13 A   To perform a task at work.
14 Q   After you saw this, did it occur to you to ask
15 Blanca Dominguez or Sylvia Castillo or Daniel Chaipan
16 whether Santacruz had trouble sitting for prolonged
17 periods of time at work?
18 A   I don't remember.  I don't remember asking.
19 Q   When you talked to Chaipan and Castillo and
20 Blanca Dominguez, did they mention that Santacruz has
21 trouble sitting for prolonged periods of time at work?
22 A   All of the agents had a VariDesk, so all of the
23 agents were able to sit or stand while working.
24 Q   Did somebody mention that to you when you talked
25 about Santacruz?