IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DEBRA SANTACRUZ, | § § § | |
| *Plaintiff,* | § § | SA-21-CV-00719-FB |
| vs. | § § § | |
| VIA METROPOLITAN TRANSIT, | § § § | |
| *Defendant.* | § § | |

**REPORT AND RECOMMENDATION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation and Order concerns the following motions: Plaintiff's Motion for Judgment on the Pleadings and/or for Partial Summary Judgment Regarding Defendant's Affirmative Defenses [#20], Defendant's Motion for Summary Judgment [#21], Plaintiff's Motion to Strike Defendant's Evidence Re Defendant's Motion for Summary Judgment [#23], and Plaintiff's Motion for Leave to File Sur Reply to Defendant's Reply Re Defendant's Motion for Summary Judgment [#32]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#25]. The undersigned has authority to enter a recommendation on Plaintiff's motion for judgment on the pleadings and Defendant's motion for summary judgment pursuant to 28 U.S.C. § 636(b)(1)(B). The undersigned has authority to enter an order on Plaintiff's motion to strike evidence and motion for leave to file a sur-reply pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, the undersigned will **grant** Plaintiff's motion for leave to file sur-reply and **deny** Plaintiff's motion to strike evidence. The undersigned will recommend that Defendant's

1

motion for summary judgment be **granted**.  In light of this recommendation, the undersigned will also recommend that Plaintiff's motion regarding Defendant's affirmative defenses be **dismissed as moot**.

## I.  Background

This case arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").  Plaintiff Debra Santacruz brings this action against her former employer, Defendant VIA Metropolitan Transit ("VIA"), alleging wrongful termination and failure to accommodate a disability.  According to Santacruz's Original Complaint, which remains the live pleading, she is an individual with a qualifying disability under the ADA and she was wrongfully terminated when her need for intermittent leave to attend to her disability increased.  (Compl. [#1], at ¶¶ 31–33.)  Santacruz also alleges that VIA denied her requested accommodations that would have allowed her to perform the essential functions of her job despite her disability.  (*Id.* at ¶ 34.)

VIA responded to Santacruz's Complaint by asserting various affirmative defenses.  (Answer [#4], at ¶¶ 42–49.)  Santacruz thereafter filed her motion for judgment on the pleadings and/or motion for partial summary judgment on VIA's affirmative defenses, arguing that VIA's answer fails to provide any factual allegations to support the defense of the failure to mitigate damages and any defense related to Santacruz's application for Social Security Disability benefits.

VIA then filed a motion for summary judgment, arguing there is no genuine dispute of material fact as to either of Santacruz's ADA claims.  Santacruz has filed a response in opposition [#22], to which VIA filed a reply [#28].  Santacruz has also moved for leave to file a sur-reply and to strike some of VIA's summary judgment evidence.  The motions are ripe for review, and the undersigned first addresses VIA's motion for summary judgment.

## II.  VIA's Motion for Summary Judgment

VIA seeks summary judgment on Santacruz's claims arising under the ADA.  In evaluating the motion, the undersigned has considered the motion, Santacruz's response, and VIA's reply.  The undersigned will also grant Santacruz's motion to file a sur-reply [#32] and has considered the sur reply attached to her motion.  Before summarizing the facts in the record and addressing the merits of the motion, the undersigned will briefly discuss Santacruz's motion to strike VIA's summary judgment evidence.

**A.      Santacruz's Motion to Strike Evidence**

Santacruz moves to strike several exhibits to VIA's motion for summary judgment evidence—written statements by Blanca Dominguez, Silvia Castillo, and Daniel Chaipan that were collected by VIA to respond to Santacruz's Charge of Discrimination filed with the Equal Employment Opportunity Commission ("EEOC"), as well as text messages between Blanca Dominguez and Santacruz and "Daniel."  The undersigned will deny the motion.

With respect to the written statements, Santacruz objects that the statements are not sworn, do not meet the technical requirements of an affidavit or declaration, and contain hearsay.  VIA does not dispute these arguments and asserts that the statements are not intended to be presented as affidavits or declarations but are statements collected in the course of an internal investigation of Santacruz's EEOC Charge.  (*See* De Gonzalez Dep. [#29-3], at 9:10–16 (testifying regarding her investigation and collection of the written statements).  These statements are not offered for the truth of the matters asserted therein, and if they were, the undersigned has not treated them as such.  Any reliance on these statements in evaluating the evidence in this case is limited to establishing that an internal investigation occurred, and the state of mind and intentions of the individuals during the phone calls and conversations with Santacruz described in the statements.

Regarding the emails, Santacruz argues the text messages are not authenticated and the identity of "Daniel" is unknown. Yet, Blanca Dominguez testified in her deposition that the exhibit containing her text messages between herself and Santacruz represent actual messages exchanged on the date reflected in the messages. (Dominguez Dep. [#29-4], at 4:12–17, 29:16–30:2.) Blanca Dominguez also testified regarding the messages she exchanged with Daniel, who she identified as Mr. Chaipan, her boss, an individual referenced repeatedly throughout the evidence presented by both parties. (*Id.* at 7:11–13, 30:2–3.) This testimony is sufficient to authenticate the evidence at issue. *See* Fed. R. Evid. 901(b)(1).

In summary, the undersigned will not strike the challenged evidence and will deny Santacruz's motion to strike. The undersigned now turns to the merits of the summary judgment motion.

**B.     Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the

existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174.

**C.     Summary Judgment Record**

The summary judgment record contains evidence establishes the following facts. (Where the record reflects a disputed fact, it is noted.) Santacruz worked for VIA from July 31, 2001, until April 29, 2019, as a Reservation Agent in VIA's Paratransit Department. (Compl. [#1], at ¶ 8; Answer [#4], at ¶ 8.) In this role, Santacruz was responsible for scheduling persons with disabilities for rides with the VIA. (Compl. [#1], at ¶ 8; Answer [#4], at ¶ 8; Job Description [#21-6], at 1.) Santacruz was promoted to full-time status in 2016. (Santacruz Dep. [#22-3], at 18:13–16.)

At the time of the events underlying this suit, Blanca Dominguez was Santacruz's direct supervisor and Sylvia Castillo was Manager of Paratransit Operations. (Santacruz Decl. [#22-6], at 2.) One of Santacruz's coworkers in her department was Lead Agent Gloria Dominguez, who happened to live next door to Santacruz. (*Id.* at 2.)

VIA has an attendance policy, which was in force at the time of Santacruz's employment, setting forth the progressive disciplinary process for employee absences. (Attendance Policy [#21-9].) According to the policy, employees accumulate two points for every unscheduled absence and three points for every day of absence without pre-notification. (*Id.* at 4.) The accumulation of four or more points triggers discipline, which begins with oral and written notices and culminates with termination upon accrual of 14 points in a single calendar year. (*Id.* at 4–5.) Approved absences under the Family Medical Leave Act ("FMLA") are considered acceptable, excusable absences and will not accumulate points under the policy. (*Id.* at 2, 5.) However, a physician's statement is required after the second day of an absence. (*Id.* at 5.) Non-emergency medical treatment, such as doctor's appointments, ongoing medical treatment, and physical therapy, require two weeks' notice. (*Id.*) Absences without prior notification, i.e., "no call no show" incidences, result in the accrual of three points. (*Id.* at 4.)

Santacruz has a back injury from a tailbone fracture, which causes her pain and sometimes necessitates absences from work. (Health Records [#22-4], at 20–25, Santacruz Dep. [#22-3], at 51:15–25.) Santacruz requested and was granted FMLA leave in 2018 in connection with her back pain. (Compl. [#1], at ¶¶ 8, 12; Answer [#4], at ¶¶ 8, 12.) According to Santacruz, historically, when she needed a day off under her approved FMLA leave, she was first supposed to tell Gloria Dominguez, her lead, and then contact Blanca Dominguez on both her personal and work phone. (Santacruz Decl. [#22-6], at 2.) However, on March 7, 2019, Blanca Dominguez notified all of her direct reports, including Santacruz, via email of a new process for using intermittent FMLA leave. (Email [#22-4], at 52.) The email explained that the prior policy merely required requesting leave or calling in sick, but under the new policy, all employees must additionally contact Belinda

Guzman in Employee Services for confirmation of FMLA coverage and preapproval of the absence. (*Id.*)

In 2019, Santacruz accumulated absence points in accordance with VIA's attendance policy. (Compl. [#1], at ¶ 11; Answer [#4], at ¶ 11.) On January 18, 2019, Santacruz received a her first written reminder, informing her that she had eight attendance points. (Written Reminder [#22-4], at 27.) On March 9, 2019, she received a second written reminder, informing her that she had ten attendance points. (Written Reminder II [#22-4], at 34.) In mid-April 2019, Santacruz accumulated additional points, leading to her separating her employment from VIA. (Santacruz contends she was terminated, but as is discussed in more detail below, VIA maintains she resigned.) Santacruz testified that at the time she was issued these reminders, she knew that 14 points could result in termination. (Santacruz Dep. [#22-3], at 33:9–15.)

The record reflects that Santacruz was absent from work on April 17 and 18, 2019, and it is undisputed that Santacruz called in the morning of these absences to report them as FMLA leave. (Compl. [#1], at ¶ 23; Answer [#4], at ¶ 23; Attendance Report [#22-4], at 54, 56.) However, the parties dispute what occurred on Friday, April 19, 2019. VIA has consistently asserted that Santacruz was "no call no show" that day. (Chaipan Statement [#21-14], at 2.) According to Santacruz, she texted Gloria Dominguez at 6:40 a.m. and Blanca Dominguez at 6:54 a.m. to report her absence. (Santacruz Decl. [#22-6], at 2.) Santacruz claims she also tried calling Blanca Dominguez at work at 9:11 a.m., 11:02 a.m., 12:12 p.m., and 12:23 p.m. and left a voicemail on Blanca Dominguez's work phone. (Santacruz Decl. [#22-6], at 2; Santacruz Dep. [#22-3], at 34:13–24.)

Regardless of whether Santacruz or VIA is correct about Santacruz's communications or lack thereof on April 19, 2019, it is undisputed that Santacruz was absent that day. It is also

undisputed that Santacruz worked a full shift the following day on Saturday, April 20, 2019. (Santacruz Dep. [#22-3], at 35:2–12.) This was the last day Santacruz worked at VIA. (*Id.*) In an email grievance to VIA, Santacruz claimed that while at work on April 20, she was told her absences on April 17, 18, and 19 did not qualify for FMLA coverage, and with the additional attendance points she had therefore accumulated, she had exceeded her number of allowed attendance points and was therefore subject to discipline. (Santacruz Grievance [#22-4], at 36–37.) Sunday, April 21, and Monday, April 22, were Santacruz's regular days off, and Santacruz did not report to work. (Santacruz Decl. [#22-6], at 4.) On April 22, however, Santacruz called Blanca Dominguez regarding her employment status. (Santacruz Dep. [#22-3], at 35:13–24.) The content of their conversations is disputed.

Santacruz claims that she called Blanca Dominguez twice that day. (*Id.* at 35:13–24.) During the first call, Santacruz asserts she asked Blanca Dominguez whether she was allowed to report to work on Tuesday, April 23, despite her attendance points. (*Id.* at 36:6–39:16.) According to Santacruz, Blanca Dominguez told her, she was sick of her "shit," was terminating her, and would let Paratransit Department Administrator, Daniel Chaipan, know, and then hung up on her. (*Id.* at 36:6–39:16.) Santacruz claims she called Blanca Dominguez back, and Blanca Dominguez told her to stop "harassing" her. (*Id.* at 39:17–40:13.) After that, Santacruz and Blanca Dominguez exchanged text messages. (*Id.* at 39:17–40:13.) The text messages in the record are, however, from April 23, not April 22. (Text Messages [#21-12].)

In the account she provided to VIA during its internal investigation, Blanca Dominguez stated that Santacruz called her on April 22 to ask her about obtaining her retirement benefits. (Blanca Dominguez Statement [#21-11], at 1.) According to the same statement, during the call, Blanca Dominguez informed Santacruz that she had *not* been terminated but had been determined

8

to be "no call no show" on April 19, which cost her three attendance points. (*Id.*) Norma Garcia, one of Santacruz's coworkers, who had previously been terminated, has provided a sworn affidavit in which she states she was with Santacruz on the evening of April 22, and Santacruz told her she had been fired by Blanca Dominguez for too many absences. (Garcia Aff. [#22-6], at 2.) When pressed at her deposition, however, Santacruz conceded that during the phone conversation, Blanca Dominguez told her that she had not yet been officially terminated. (Santacruz Dep. [#22-3], at 43:3–5.)

Consistent with Santacruz's deposition testimony, the text messages between Santacruz and Blanca Dominguez from April 23, 2019, reflect that Blanca Dominguez repeatedly informed Santacruz that there is a termination process that must be followed that would take some time, involving a recommendation and documentation to Mr. Chaipan and Ms. Castillo, and that Santacruz had not yet been officially terminated. (Text Messages [#21-12], at 1–6.) During their exchange, Blanca Dominguez also told Santacruz that if she needed her retirement funds immediately, she could resign in lieu of waiting for her official termination. (*Id.*) Ms. Castillo's sworn declaration describes the termination process as involving similar steps to those described by Blanca Dominguez—first a recommendation by Ms. Castillo to Mr. Chaipan, who validates the accrual of attendance points and determines whether there is a basis for removing any of the accumulated points to avoid termination. (Castillo Decl. [#21-19], at ¶ 4.) Then, Ms. Castillo and Mr. Chaipan collectively decide whether to recommend termination to Human Resources. (*Id.*)

The record also contains text messages between Blanca Dominguez and Mr. Chaipan from April 23, 2019, in which she relayed to him that she was already working on a "letter" for Santacruz and asked whether it should come from her, Mr. Chaipan, or Ms. Castillo, and they discussed the

9

timeline of Santacruz's attendance record.  (Castillo Decl. [#21-19], at ¶ 5; Text Messages [#21-12], at 5–6.)

On April 23, Santacruz also called Ms. Castillo.  According to Ms. Castillo, during this call, she explained to Santacruz that Blanca Dominguez does not have authority to fire any VIA employee, and that per the termination policy, all terminations are handled at the Vice President or Manager level only.  (Castillo Decl. [#21-19], at ¶ 3.)  Santacruz testified that during this call, Ms. Castillo told her, as Blanca Dominguez had the day before, that if she needed quicker access to her funds, she should submit her resignation.  (Santacruz Dep. [#22-3], at 43:9–13.)  Santacruz also conceded in her deposition testimony that it was clear during their conversation that Ms. Castillo had not yet approved her termination.  (*Id.* at 44:10–23.)

On April 24, 2019, Santacruz contacted Mr. Chaipan to find out where she stood on termination.  (Castillo Email [#22-4], at 49; Santacruz Dep. [#22-3], at 45:1–6.)  According to Santacruz, during this conversation, Mr. Chaipan told her she could come back to work and finish her pay period.  (Santacruz Dep. [#22-3], at 45:21–46:13.)  Santacruz claims that although she was told she could come back to work, she was never informed about the consequences of not coming to work.  (*Id.* at 45:24–46:3.)  Santacruz never returned to work at VIA.

On May 3, 2019, Ms. Castillo sent Santacruz a letter, acknowledging that she had not reported to work since April 20, 2019, and had not provided documentation regarding the absences.  (Resignation Ltr. [#21-15], at 1.)  The letter references an April 29, 2019, phone conversation with Mr. Chaipan, in which Santacruz allegedly stated she would not be returning to work at VIA.  (*Id.*)  VIA relayed in the letter that it considered this action to signify Santacruz's resignation and a waiver of all rights to internal grievance procedures.  (*Id.*)

Santacruz filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) on August 30, 2019, alleging sex and disability discrimination and retaliation. (EEOC Charge [#21-17], at 1.) The Charge claims that Santacruz suffers from chronic back pain that limits her daily activities; that she needed days off or short breaks to walk around related to this pain; and that she asked VIA for accommodations. (*Id.*) According to Santacruz's allegations in the Charge, VIA initially gave her the breaks and approved her leave but then "denied [her] accommodations," "disciplined [her] for leave [she] took from work that was related to [her] disability," and terminated her employment on April 22, 2019. (*Id.*) Santacruz filed this suit on July 28, 2021.

**D.     Analysis**

Santacruz accuses VIA of disability discrimination in violation of the ADA. The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Disability discrimination can take the form of traditional discrimination, such as wrongful termination, or a failure to accommodate a disability. *See Feist v. Louisiana*, 730 F.3d 450, 452 (5th Cir. 2013). Santacruz asserts both types of ADA discrimination claims. VIA argues that both of these claims fail as a matter of law on the summary judgment record. The undersigned agrees.

     **i.     Wrongful Termination**

Where a plaintiff offers only circumstantial evidence of disability discrimination, as here, this Court applies the *McDonnell Douglas* burden-shifting framework. *McInnis v. Alamo Comm. College Dist.*, 207 F.3d 276, 279 (5th Cir. 2000). To prevail on her claim under this standard, Santacruz must prove that (1) she suffers from a disability; (2) she was qualified for her job; and

(3) she was subject to an adverse employment action on account of her disability. *EEOC v. LHC Group, Inc.*, 773 F.3d 688, 695–97 (5th Cir. 2014).

VIA argues it is entitled to summary judgment because Santacruz cannot prove she suffers from a disability under the ADA or that she was subjected to an adverse employment action. The Court need not address whether Santacruz suffers from a disability, as Santacruz cannot establish she suffered an adverse employment action.

An adverse employment action is one that constitutes an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating. *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007). Santacruz's disability discrimination claim is based on her alleged wrongful termination in April 2019. There is no other adverse employment action identified by Santacruz in her Complaint or briefing. Santacruz asserts that Blanca Dominguez terminated her during their phone conversation on April 22, 2019, when Santacruz called to ask about her employment status due to her attendance points. Santacruz testified in her deposition that Blanca Dominguez told her during that call that she was sick of her "shit" and was terminating her. (Santacruz Dep. [#22-3], at 36:6–39:16). Santacruz also presents the Court with the affidavit of her friend and former colleague, Ms. Garcia, who stated that she was with Santacruz the night of April 22, 2019, and Santacruz told her she had been terminated for having too many absences. (Garcia Aff. [#22-6], at 2.) This evidence is insufficient to generate a genuine dispute of material fact on this issue, in light of the other evidence in the record.

Santacruz conceded elsewhere in her deposition that it was clear during her phone conversation with Blanca Dominguez that she had not yet been officially terminated. (Santacruz Dep. [#22-3], at 43:3–5.) This testimony is supported by text messages exchanged between Blanca Dominguez and Santacruz the following day, in which Blanca Dominguez clearly stated that

termination is a process that would take time and involved Mr. Chaipan and Ms. Castillo and informed Santacruz that she had not yet been officially terminated. (Text Messages [#21-12], at 1–6.) Also consistent with the foregoing, the sworn declaration by Ms. Castillo states that termination for excessive absences only occurs after a recommendation by herself to Mr. Chaipan, who then decides whether there is a basis to deduct some of the accumulated attendance points or to proceed with termination through a recommendation to Human Resources. (Castillo Decl. [#21-19], at ¶ 4.) Finally, Santacruz testified that she spoke with Ms. Castillo on April 23, 2019, about the need for her retirement funds and conceded that it was clear during their conversation that Ms. Castillo had not yet approved her termination. (Santacruz Dep. [#22-3], at 44:10–23.) Santacruz's deposition testimony regarding her April 24, 2019 conversation with Mr. Chaipan also contradicts her assertion that she was terminated on April 22, as she stated that Mr. Chaipan told her to come back to work and finish her pay period. (*Id.* at 45:21–46:13.)

Furthermore, it is undisputed that Blanca Dominguez does not have authority to fire any VIA employee and that all terminations are handled at the Vice President or Manager level only. (Castillo Decl. [#21-19], at ¶ 3.) Finally, the May 3, 2019 letter addressed to Ms. Castillo from Santacruz acknowledges that Santacruz had not returned to work since April 20, 2019, and had not provided documentation regarding the absences. (Resignation Ltr. [#21-15], at 1.) VIA conveyed to Santacruz in the letter that it had considered her to have resigned her employment. (*Id.*)

Even if Santacruz subjectively believed she had been terminated on the night of April 22 after talking with Blanca Dominguez, the overwhelming evidence in the summary judgment record belies any credible assertion that she had any rational basis to continue to hold that belief in the coming days and weeks, in light of repeated communications from her supervisors that she had not yet been subjected to actual termination.

In light of Santacruz's failure to generate a material fact issue on her termination, VIA is entitled to summary judgment on her disability discrimination claim based on this alleged adverse employment action.

### ii. Failure to Accommodate

To prevail on her claim that VIA failed to accommodate her disability, Santacruz must prove that (1) she is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations. *Feist*, 730 F.3d at 452. Again, VIA argues that Santacruz was not disabled under the ADA. VIA further argues that Santacruz cannot establish that VIA denied her a reasonable, requested accommodation. The undersigned agrees that there is no evidence in the record of any requested accommodation that was denied by VIA. Thus, as with her wrongful termination claim, the Court need not address whether Santacruz could establish a disability cognizable under the ADA.

Assuming without deciding that Santacruz's back injury constitutes a disability under the ADA, Santacruz repeatedly testified that the only accommodations she needed for this disability were the ability to "get up and be able to walk around every two hours or so" and to "stand up and stretch." (Santacruz Dep. [#22-3], at 53:9–15, 56:12–21). Santacruz further testified that she requested this accommodation from Gloria Dominguez, her lead; that Gloria Dominguez in turn asked Blanca Dominguez for permission for Santacruz to stand up and walk around periodically throughout the work day; and that Blanca Dominguez "said it was okay." (*Id.* at 53:9–15.) Santacruz also testified that VIA had installed standing desks for all employees in her department and she was therefore permitted to stand to work at will. (*Id.* at 59:6–11.) Santacruz therefore has admitted that she received every accommodation she requested.

The only other accommodations referenced by Santacruz in the summary judgment record is a request to work from home about one year prior to the alleged adverse employment action and an accommodation for an eye condition. (Santacruz Decl. [#22-6], at 3.) The eye condition and any requested accommodation are not mentioned in Santacruz's summary judgment briefing, and Santacruz testified in her deposition that she had permission to wear glasses and she was able to adjust the brightness of her screen. (Santacruz Dep. [#22-3], at 56:3–16.) This accommodation is not at issue.

As to the work-from-home request, Santacruz does argue in her summary judgment response that she requested a work-from-home accommodation in 2018, and that it was denied based on her large number of FMLA-approved absences. This accommodation is not referenced in her EEOC Charge, which only addresses the need for short breaks to walk around and leave from work to deal with her disability. (EEOC Charge [#21-17], at 1.) Even assuming a claim based on this denied accommodation was properly exhausted, which it does not appear to be, Santacruz's testimony that she received all accommodations she needed for her back injury (the ability to walk around and stand up) contradicts any assertion that her back disability necessitated working from home.

Finally, insofar as Santacruz is attempting to argue that VIA denied her a reasonable accommodation by failing to approve specific absences as qualified FMLA leave, this argument also fails as a matter of law. "[A] request for FMLA leave is not a request for a reasonable accommodation under the ADA." *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017). "[R]ather it is a right enforceable under a separate statutory provision." *Id.* (internal citation and quotation omitted). "The ADA and the FMLA have divergent aims, operate in different ways, and offer disparate relief." *Id.* (internal citation and quotation omitted). Of course, leave can be an

15

accommodation under the ADA when an employee needs time off due to a disability but has exhausted all available FMLA leave.  But here, Santacruz is not claiming that she had exhausted all available FMLA leave to address her back injury.  Santacruz still had FMLA leave.  To the extent Santacruz is contending that certain absences should have qualified for FMLA coverage or that she was unduly penalized for taking FMLA-protected leave, those claims would be actionable under the FMLA, not the ADA.

In summary, Santacruz has not presented the Court with sufficient evidence from which a reasonable factfinder could conclude that VIA denied her a reasonable accommodation for a known disability.  Accordingly, VIA is entitled to summary judgment on her disability discrimination claim based on a failure to accommodate theory.

### III.  Santacruz's Remaining Pending Motion

Because all of Santacruz's claims fail as a matter of law, the Court should dismiss as moot Santacruz's motion for judgment on the pleadings or partial summary judgment on VIA's affirmative defenses related to mitigation of damages and the application for Social Security benefits.

### IV.  Order and Recommendation

Having considered VIA's summary judgment motion, the responses and replies thereto, the summary judgment record, and governing law, the undersigned **recommends** that Defendant's Motion for Summary Judgment [#21] be **DENIED** and Plaintiff's Motion for Judgment on the Pleadings and/or for Partial Summary Judgment Regarding Defendant's Affirmative Defenses [#20] be **DISMISSED AS MOOT**.

**IT IS ALSO HEREBY ORDERED** that Plaintiff's Motion to Strike Defendant's Evidence Re Defendant's Motion for Summary Judgment [#23] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Sur Reply to Defendant's Reply Re Defendant's Motion for Summary Judgment [#32] is **GRANTED**.

### V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted

by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 16th day of February, 2023.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE